UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

24/7 APPS LTD.,

                Plaintiff,

        -v-

INMOBI INC.,

                Defendant.

------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 10, 2016

16-cv-53 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

     Plaintiff 24/7 Apps Ltd. ("24/7 Apps") initiated this suit against InMobi Inc. ("InMobi") on January 5, 2016.  (ECF No. 1.)  InMobi has moved to dismiss the complaint on two bases: (1) a forum selection clause indicating that the courts of Singapore shall have exclusive jurisdiction over the instant case and other similar disputes; and (2) language in the contract indicating that InMobi, the defendant in this action, is not a party to the contract.  (ECF Nos. 14 & 15.)  Although 24/7 Apps attached the Agreement it argued was breached to its complaint, its defenses to InMobi's motion to dismiss rely on attempts to introduce extraneous additional documents.  As discussed further below, such additional submissions are inappropriate and not considered.  For the reasons stated below relating to the forum selection clause,[1] InMobi's motion is hereby GRANTED.

---

[1] The Court need not, and does not, reach the question of the proper defendant in this matter.

I. BACKGROUND AND LITIGATION HISTORY

For purposes of this motion, the Court accepts all well-pled factual allegations in 24/7 Apps' complaint[2] as true.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

24/7 Apps is an Israeli company that has its main office in Israel.  (Compl. ¶ 2.)  It has created several popular application which are sold in the Apple Store and Google Play marketplace and which generate substantial usage and traffic.  (Id. ¶¶ 9-10.)

InMobi is a Delaware corporation with a place of business in New York.  (Id. ¶ 3.)  It runs a large mobile advertising network through which it places ads within developers' software applications and splits the resulting revenue.  (Id. ¶¶ 11-13.)  The revenue from advertisers goes directly to InMobi, which then pays its partner application owners.  (Id. ¶¶ 17-20.)

In January 2014, 24/7 Apps and InMobi entered into an agreement whereby InMobi would run advertising campaigns on the software applications created and owned by 24/7 Apps.  (Id. ¶ 14.)  From May 2014 through September 2015 InMobi made regular payments to 24/7 Apps.  (Id. ¶¶ 17-19.)

In October 2015, however, the normal electronic payment was not wired.  (Id. ¶ 19.)  On October 20, 2015, InMobi sent 24/7 Apps an email indicating that it was withholding a payment of $289,960.30 "per Section 6.7 of InMobi's online Terms of

---

[2] As discussed further, in connection with this motion 24/7 has submitted a number of additional documents neither attached to nor referenced in its complaint.  The Court ignores those submissions, which are not properly before the Court on a motion to dismiss.

2

Service," because "certain invalid activities are generated through [24/7 Apps'] which do not comply with InMobi's online Terms of Service." (Id. ¶ 20; Exh. B.)

On October 26, 2015, the CEO of 24/7 Apps sent a letter to InMobi contesting the allegation of a violation and requesting that InMobi electronically wire the withheld payment. (Id. ¶ 21; Exh. C.) On October 30, 2016, InMobi responded by email, restating its view that 24/7 Apps had engaged in actions that breached the Terms of Service and refusing to withhold the relevant mounts. (Id. ¶ 22; Exh. D.) On November 13, 2015, 24/7 Apps' legal counsel sent a letter to InMobi again requesting payment. (Id. ¶ 23; Exh. E.) In December, 2015, the parties engaged in email discussions about the dispute, as part of which a representative of InMobi offered to pay 24/7 Apps half the disputed amount to resolve the dispute. (Id. ¶ 24; Exh. F.) 24/6 Apps did not accept this offer, and the matter proceeded to litigation.

24/7 Apps filed the complaint in this matter on January 5, 2016, asserting claims for breach of contract, intentional breach of the covenant of good faith and fair dealing, unjust enrichment, and specific performance. (Id. ¶ 28-54.) 24/7 Apps attached several documents to the complaint, including the October-December 2015 communications between the parties. (Id. Exhs. B-F.)

24/7 Apps also attached to its complaint a document titled "Terms and Conditions," which 24/7 Apps asserts is InMobi's "Agreement with software developers." (Id. ¶ 13; Exh. A.) The Terms and Conditions include a number of provisions, such as how payments will be calculated and made (id. § 6), each

3

contracting party's commitment to confidentiality (id. § 8), and the consequences of termination (id. § 13).

Two provisions in the Terms and Conditions attached to 24/7 Apps' complaint are of particular importance to the instant motion.  First, the terms establish that disputes related to the contract "shall be governed by, and construed in accordance with, the laws of Singapore," and that "[t]he Parties irrevocably agree that the courts of the [sic] Singapore shall have exclusive jurisdiction to settle any dispute or claim that arises out of or in connection with these Conditions and/or the Contract or their subject matter or formation (including non-contractual disputes or claims)." (Id. §§ 16.1, 16.2.)  Second, the definitions section defines "Party" as "each of InMobi and You," and in turn defines "InMobi" as "InMobi PTE Ltd, a company incorporated and existing in accordance with the laws of the country of Singapore, with registered address at 30 Cecil Street #19-08, Prudential Tower, Singapore 049712, acting on behalf of itself and its affiliates."  (Id. § 17.1.)

On March 3, 2016, InMobi moved to dismiss the complaint on the bases of the forum selection clause and the distinction between it and InMobi PTE.  (ECF Nos. 6 & 7.)  Judge Kenneth M. Karas denied the motion without prejudice for failure to follow the Court's Individual Practices, which require a promotion conference before the making of such a motion.

On April 15, 2016, this case was reassigned to the undersigned.

On April 28, 2016, InMobi filed the instant motion, in which it again moved to dismiss the complaint on the bases of the forum selection clause and the

4

distinction between it and InMobi PTE.  (ECF Nos. 14 & 15.)  In support of this motion, InMobi submitted a declaration from the Associate General Counsel for InMobi Technology Services Private Limited, which asserts that "InMobi Inc. is a Delaware corporation and is a wholly owned subsidiary of InMobi PTE Ltd., a company incorporated and existing under the laws of Singapore."  (ECF No. 16, Exh. B ¶ 2.)

On May 19, 2016, 24/7 Apps filed its opposition to the motion to dismiss.  (ECF No. 17.)  The crux of 24/7 Apps' argument was that different Terms of Service, not containing a forum selection clause or identifying its contracting partner as solely InMobi PTE, had been in place when 24/7 Apps registered its account with InMobi in 2012, and that these earlier Terms of Service controlled.  (Id.)  The opposition also included a brief request for leave to amend the complaint to add InMobi PTE as a defendant.  (Id. at 1, 9.)  24/7 Apps attached a number of exhibits to this opposition, including a number of iterations of InMobi's Terms of Service.  (Id. Exhs. C & D.)  24/7 Apps' opposition did not include an affidavit authenticating the attached exhibits.  (See id.)

On May 27, 2016, InMobi filed its reply brief, which argued that the older Terms of Service 24/7 Apps had invoked should be ignored and in any event never applied to 24/7 Apps.  (ECF No. 19.)  At this point the motion to dismiss was fully briefed.

On June 13, 2016, 24/7 Apps filed declarations from its CEO and counsel.  (ECF Nos. 22 & 23.)  These declarations attested to the contents of the exhibits that

5

had been attached to 24/7 Apps' opposition to the motion to dismiss. (See id.) The next day, InMobi asked the Court to disregard the declarations as disallowed sur-replies. (ECF No. 24.) The day after that, 24/7 Apps requested the Court's leave to have the declarations considered a part of its opposition materials. (ECF No. 25.)

II. PRINCIPLES OF LAW

    A. Rule 12(b)(6) Motion to Dismiss Standard

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a plaintiff must provide grounds upon which his claim rests through "factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In applying this standard, the Court accepts as true all well-pled factual allegations, but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Id. The Court will give "no effect to legal conclusions couched as factual allegations." Port Dock & Stone Corp. v.

6

Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).  Knowledge and other conditions of a person's mind may be alleged generally.  Fed. R. Civ. P. 9(b).  A plaintiff may plead facts alleged upon information and belief "where the facts are peculiarly within the possession and control of the defendant." Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010).  But, if the Court can infer no more than the mere possibility of misconduct from the factual averments—in other words, if the well-pled allegations of the complaint have not "nudged [plaintiff's] claims across the line from conceivable to plausible"—dismissal is appropriate.  Twombly, 550 U.S. at 570; Starr, 592 F.3d at 321 (quoting Iqbal, 556 U.S. at 679).

In deciding a 12(b)(6) motion, the Court may not consider evidence proffered by any party, but is instead limited to the allegations in the complaint and facts from documents either referenced therein or relied upon in framing the complaint. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

B.   Forum Selection Clauses

Federal Rule of Civil Procedure 12(b)(3) permits a defendant to assert the defense of "improper venue" at the motion to dismiss stage.  Courts within this circuit have analyzed motions to dismiss based on forum selection clauses as falling under Rule 12(b)(3).  E.g., Jockey Int'l, Inc. v. M/V "Leverkusen Express", 217 F. Supp. 2d 447, 450-51 (S.D.N.Y. 2002).

The Second Circuit has identified the steps courts follow to determine whether to dismiss a claim based on a forum selection clause.  First, the Court

determines whether the clause is presumptively enforceable.  "If the forum selection clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable."  <u>S.K.I. Beer Corp. v. Baltika Brewery</u>, 612 F.3d 705, 708 (2d Cir. 2010) (quoting <u>Phillips v. Audio Active Ltd.</u>, 494 F.3d 378, 383 (2d Cir. 2007)).

Forum selection clauses can be found in "clickwrap agreements," which are licenses which require "users of [a service-provider's] program … to agree to the proffered terms in order to use the program."  <u>TradeComet.com LLC v. Google, Inc.</u>, 693 F. Supp. 2d 370, 377 (S.D.N.Y. 2010).  "District courts in this Circuit have found that clickwrap agreements that require a user to accept the agreement before proceeding are 'reasonably communicated' to the user for purposes of this analysis."  <u>Id.</u> (collecting cases).

Whether a forum selection clause is mandatory depends initially on the language of the contract.  <u>Id.</u>  "A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language."  <u>Id.</u> (quoting <u>Phillips</u>, 494 F.3d at 386).

Once the presumptive enforceability of a forum selection clause is established, the burden shifts to the party resisting enforcement.  "There exists a strong presumption favoring enforcement of freely negotiated choice of forum provisions."  <u>Wells Fargo Century, Inc. v. Brown</u>, 475 F. Supp. 2d 368, 371 (S.D.N.Y. 2007).  That presumption can be rebutted "by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid

for such reasons as fraud or overreaching." S.K.I. Int'l, 612 F.3d at 708 (internal quotation marks omitted) (quoting Phillips, 494 F.3d at 383-384).

III.   ANALYSIS

Deciding the instant motion to dismiss requires the Court first to determine the contents of the operative contract between 24/7 Apps and InMobi,[3] and then to determine whether that contract contains a forum selection clause that requires that this case be dismissed.

There can be little doubt that the agreement at issue in this suit is the one 24/7 Apps attached to its complaint as Exhibit A.  The complaint first references the contract in paragraph 13, when it identifies InMobi's "Agreement with software developers (see Exhibit A)."  (Compl. ¶ 13.)  It continues to use the same capitalized reference to an "Agreement" throughout the complaint, which alleges, inter alia, that "[o]n or about January 2014, Plaintiff 24/7 Apps and Defendant InMobi entered into an Agreement," that the Agreement is "valid and binding," and that "24/7 Apps has performed all of its obligations under the Agreement since the start date of the Agreement."  (Id. ¶¶ 14, 29, & 30.)  The complaint neither references nor attaches any alternative agreement or contract alleged to have governed the relationship between these parties.

The Court need go no further.  A motion to dismiss tests the legal adequacy of a plaintiff's pleading, and as a result courts are generally barred from referring to materials outside the four corners of the complaint.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-55 (2d Cir. 2002); Goldman v. Belden, 754 F.2d 1059, 1067

---

[3] InMobi argues that there is no contract between 24/7 Apps and InMobi, and that the only operative contract is between 24/7 Apps and InMobi PTE.  Because the Court grants the motion to dismiss on the basis of the forum selection clause, it assumes for purposes of this motion only that the contract is between 24/7 Apps and InMobi.

10

(2d Cir. 1985). 24/7 Apps had a free hand to construct its complaint in the manner it saw fit and to attach the documents it alleged governed its relationship with InMobi. Even after InMobi has twice moved to dismiss this complaint on the basis of the forum selection clause, 24/7 Apps still has not sought leave to amend the complaint to substitute a different Agreement for the one it attached; the brief request for leave to amend in 24/7 Apps' opposition papers was limited to the addition of InMobi PTE as a party. (ECF No. 17 at 1, 9.) The contract attached to the complaint is the operative agreement.

This brings us to the second question, whether the operative agreement contains a forum selection clause which requires dismissal of the complaint. As discussed above, § 16.2 of the Terms of Service attached to the complaint provide that "[t]he Parties irrevocably agree that the courts of the [sic] Singapore shall have exclusive jurisdiction to settle any dispute or claim that arises out of or in connection with these Conditions and/or the Contract or their subject matter or formation (including non-contractual disputes or claims)."

This clause clearly both "has mandatory force and covers the claims and parties involved in the dispute." S.K.I. Beer Corp. v. Baltika Brewery, 612 F.3d 705, 708 (2d Cir. 2010) (quoting Phillips v. Audio Active Ltd., 494 F.3d 378, 383 (2d Cir. 2007)). The clause's language does not simply ensure that the courts of Singapore are available to hear any dispute, it makes the jurisdiction of those courts exclusive. See Phillips, 494 F.3d at 386 (distinguishing between permissive and mandatory forum clauses). In addition, the complaint alleges that InMobi

11

breached the contract between the parties, violated a covenant implied by that contract, was thereby unjustly enriched, and should be made to specifically perform the contract. (Compl. ¶¶ 28-54.) Each of these claims clearly "arises out of or in connection with" the Terms of Service.

It is also evident from the face of the complaint that "the forum selection clause was communicated to the resisting party." S.K.I. Beer, 612 F.3d at 708 (quoting Phillips, 494 F.3d at 383). The Terms of Service attached to the complaint indicate that the user was required to "click[] 'Accept' to signify that you accept these Conditions and agree to this Contract." (Compl. Exh. A § 17.1.) 24/7 Apps acknowledges that when its CEO "created the account, he was required to click a button that he agreed to InMobi's Terms of Service." (ECF No. 17 at 5.) This would seem to suffice to demonstrate that the terms were "reasonably communicated." See TradeComet.com LLC v. Google, Inc., 693 F. Supp. 2d 370, 378 (S.D.N.Y. 2010) ("TradeComet neither denies that its representatives agreed to the user agreement that contained the forum selection clause nor offers any evidence to the contrary. Thus, TradeComet has not overcome Google's prima facie showing that representatives of TradeComet accepted the forum selection clause at issue in this action.").

24/7 Apps argues that this does not settle the question of reasonable communication because the forum selection clause was not a part of the Terms of Service its CEO originally accepted, but was only added in later revisions to the Terms of Service which 24/7 Apps was never required to affirmatively acknowledge

and accept.  (ECF No. 17 at 6-8.)  This argument is foreclosed by the reasoning above: the Court evaluates the contract attached to the complaint as the binding agreement between the parties, rather than impermissibly analyzing extraneous documents introduced in support of 24/7 Apps' opposition to the motion to dismiss.

The forum selection clause is thus presumptively enforceable.  The Court would only fail to give effect to the parties' contractual intentions if 24/7 Apps made a strong showing that the clause was unreasonable, unjust, or invalid.  S.K.I. Beer, 612 F.3d at 708.  24/7 Apps has not leveled any such allegations at the forum clause in either its complaint or its briefing on the instant motion.  (ECF Nos. 1 & 17.)  In contrast, courts in this circuit and district have recognized the adequacy of Singapore's courts.  See, e.g., Anwar v. Fairfield Greenwich Ltd., 742 F. Supp. 2d 367, 377 (S.D.N.Y. 2010).  Accordingly, 24/7 Apps has not, and likely could not, rebut the presumption of enforceability for the forum selection clause.

IV. CONCLUSION

For the reasons stated above, InMobi's motion to dismiss is GRANTED.  The Clerk of Court is directed to close the motion at docket no. 14 and to TERMINATE this matter.

SO ORDERED.

Dated:    New York, New York
          August 10, 2016

_____
KATHERINE B. FORREST
United States District Judge